Alright, Mr. Mann, is it Mann or how do you pronounce your name? Professor Fitzpatrick of Fordham Law School told me that my pronunciation, which is Mann, is really my slave name, but I pronounce it Mann. Alright, Mr. Mann, you've reserved two minutes for rebuttal, so that gives you eight minutes to advocate. The floor is yours. Thank you very much, Ron. May it please the Court, this case asks whether parties who directly pay for and defend fraudulent lawsuits may be dismissed at the pleading stage as too remote under RICO, and whether, after identifying a pleading deficiency, the Court may then bar amendment to directly respond to the ruling. Roosevelt is a reinsurer who, under contract, took on the role of a primary insurer, paid the settlements, judgments, administrative and legal expenses, which were the direct result of the fraudulent lawsuits. Tradesman, my other client, they were the general agent and administrator who took on the role of adjusting and investigating the claims, thereby losing money because of the number and complexity. They're clearly not directly in line. They're managing these claims. Certainly, both the insurer and the insured stand in front of them, don't they? No, they don't, actually, and I'm going to tell you why, Your Honor. In this particular case, okay, we start with workers' compensation cases. In New York, the insurer, the actual contractor, he doesn't get involved at all. It's for the insurance company. I'm fairly familiar with it. Okay. I haven't served on the New York Court of Appeals for seven years, and served in the State Legislature, and been a practicing lawyer. I remember these cases well, and so I don't disagree with you on the workers' comp side, but from the standpoint, I asked you about Tradesman. Okay. Tradesman is a secondary case. Tradesman is an adjuster. They provide adjusting services. They do more than that, Your Honor. Do they insure risk? Pardon me? Do they insure risk? They take on part of the responsibility of the primary insurer. I ask you a simple question. Do they insure risk? They don't insure the risk. There you go. And so, therefore, those that are being insured against the risk stand in front of them. Yes. Not the insurers that provide that. Do they not? That may very well. Because your claim is that there's a fraud with regard to the representations and claims for results of insurable claims. Yes, Your Honor. But the fact remains that Tradesman does lose money in this fraud, and that's the nub of the problem. Losing money is not enough, though. The law is pretty clear. I think you understand this. It has to be a direct relationship. And that's what I'm talking about. It was a direct relationship of this fraud. How can the direct relationship be with the insurer if there's a construction employer in step one? Step one is the construction employer, right, who's being – No, the step one includes both the insurer as well as the general agent in this particular case. All these parties suffered but-for damages as a result of the fraud. That's not the test. The test is not whether parties suffered but-for. There's no case – just to go to reinsurance for a moment – there's no case in the history of this circuit or in any other federal court where a reinsurer has been found to have RICO standing. You would agree with that, right? I also would state, Your Honor, there's no case that says that they don't. So we're in – I would say that we're in a case of first impression. However- Is a reinsurer ever going to be in step one? By definition, a reinsurer is not in step one. Because in this particular case, by contract, the reinsurer took on the role of the direct insurer. They put up the – they put up all of the money in reserves. They paid all of the money. So therefore, yes, step one is satisfied here, Your Honor. That's a very curious statement you just made because fronting arrangements are illegal in New York. I'm sorry, Your Honor? You're talking about a fronting arrangement. Yes, Your Honor. And there's an attorney general's opinion saying that fronting arrangements are improper in New York, doesn't it? My research tells me that there's never been such a finding. As a matter of fact, it's quite the opposite, Your Honor. Okay. Especially in this particular case because accredited, the fronting insurer does remain liable in the event that Roosevelt were to become insolvent. What troubles me with this case is that the original complaint in which Judge Gonzalez expressed some concern about it and raised the Holmes issue with you, the Holmes – Justice Souter's opinion in Holmes and the fact that – about the necessity of direct injury. The original complaint casts Roosevelt as a reinsurer. The second amended complaint describes a completely different arrangement. Why wasn't the second amended complaint – those facts were clearly available to you at the time you applauded the original complaint, weren't they? Yes, Your Honor, but I don't believe that we focused properly on this particular issue. Wait a second. Holmes had been around for quite some time. Your Honor, don't – The Holmes case, as Judge Bianco has indicated to you, seems to be standing several steps down the line. And, in fact, that was the problem in Holmes, is that Sipic was asserting subrogation rights. There is a major distinction – And the court expressed concern about that. Yes, Your Honor. There's a major distinction between Holmes and the case that's now before you. Holmes involved Sipic. So you're not going to tell me why you didn't plead – You start with a bankruptcy. Bankruptcy – You're not going to tell me why you didn't plead the more specific complaint of casting your client as fronting the risk, either presented to accredited or to someone else, and, in essence, taking on the risk without having to do anything. If what you're asking me is whether or not the first amended complaint is accurate, my answer is no. The second amended complaint is accurate. I know that. I've read the underlying documents, and there's no question in my mind that Roosevelt took on the role of a direct insurer in this particular case and accredited to change places with it. Let me ask you. They write liability, right? They write general liability, comprehensive liability coverage? Yes, Your Honor. They took on all of the liability. That was the whole point of it. Accredited stood in back in the event that Roosevelt were to become insolvent. That was it. And that's what saves it, as Your Honor pointed out, in the attorney general's opinion, that's what saves it from being an illegal fronting risk. And doesn't that present a problem for him with regard to the direct injury, since in instances where a worker suffers a grave injury, pursuant, as defined by the insurance law, the workers' compensation law, following the 1996 amendments to the statute, which took away the right of third parties to sue an employer, but presuming that they suffered a grave injury, don't you have indemnification and contribution problems with regard to the owner of the property, subcontractors that might in some way have some kind of causal connection to the worker's injury? The fact of the matter is, Your Honor, that our client actually paid the settlements, paid the judgments, to suggest that somehow that we can ignore reality and say, well. I'm not asking to ignore reality. I'm just inquiring of you, were there instances in which there were grave injuries for which there were claims with regard to indemnification or contribution from others, either the general contractor, the owner, both of which have non-delegable duties under Section 240 of the labor law, with regard to injuries that occur at a work site, and or subcontractors pursuant to contracts with regard to the provision of work at the site that require indemnification or contribution? My understanding is that at least as to the five or six claims that are the subject matter of this lawsuit, those issues did not arise. Our client paid the direct judgment settlements. These are only claims where the liability carrier paid a liability claim as to the employer? Do you know this? I'm simply telling you what my understanding is, Your Honor. There's not much detail as to what's going on. At this point, we're at the very early stages of this litigation, and some of the questions you're asking are not even in the record below. They're very good questions, I might add. I'm just trying to figure out, you've got to plead a direct injury, and so I'm trying to figure out where this is wrong. Well, the direct injury is we paid the judgments. That's pretty direct. I mean, when you write a check for a couple of million dollars. By that theory, then, anybody who writes a check has RICO standing. That's your theory. No, my theory is that when you write a check as a direct result of the fraud, then you have RICO standing in this particular case. I'm not going to extend it beyond that. But it's not a direct result. The cases that you cite, the farm insurance cases, the claim is being submitted directly to the insurance company, whereas here, you have a lawsuit that's, right, the construction employer is in between your client. Your Honor, in a situation like this. There's no case where the fraudulent claim wasn't made directly to the insurance company where any court that I'm aware of, you can cite me in the case, but I was looking at each one of them, and in every instance where RICO standing has been found with respect to an insurance company, it was because the fraudulent claim was submitted directly to them. We don't have that here. Well, in this particular case, Your Honor, in these particular cases, these claims were submitted to tradesmen for investigation, and they ended up being paid by Roosevelt. No, there's no question about that. But if the employers were not insured, they would have still been on the hook for the lawsuit, right? But they were. Well, but my point is that this is an illustration as to why it's not. Well, you've been doing this the whole argument. You've just been interrupting when the question is being asked. You can't do that. All right. But the point is this is an illustration as to why this is not a first-step party because the fact is that if there were no insurer, there would still be a fraudulent claim, right? There would still be a fraudulent claim if there were no insurer, but there was an insurer, Your Honor. Okay, but then that goes back to, I think, the point I made that you disagreed with, which is your view is that whoever is out of pocket has RICO standing in every case. And it seems to me that's a completely new law that's inconsistent with the Supreme Court and our prior precedent. Maybe we got it all wrong, but I don't see how you can say that that is the current state of the law. Am I missing something? I think you are, Your Honor. So what am I missing? What I think you're missing in this particular case is two things. First, a step or a but-for, the but-for test assumes that there may be more than one party that is damaged by the fraud. In this particular case, there's no question that the insurers were damaged by the fraud. There's no question that they're damaged, and they might have great state law claims, but they just are not going to get treble damages under RICO, which is what you really want, right? Well, that's what I believe is. That's the reason why this is being pitched as a RICO and why we're engaging in this fiction as to whether they're the first step victim. So, anyway, you've got two minutes for rebuttal, so we'll come back to you again, Mr. Mann. Thank you very much, and I apologize if I interrupted. Okay, well, I know you're anxious to answer, but you've got to let the judge finish the question before you answer. Thank you very much. Okay, thank you. Mr. Gergen, am I pronouncing that name right? Yes, Your Honor. Really? I would have bet against myself. All right, the floor is yours. Your Honor, may it please the Court, Eric Gergen on behalf of the Appleys, Herbert Subin, and Eric Subin. For nearly two years now, the Subins have lived under a dark cloud of racketeering asserted by two entities that have no standing to assert these RICO claims. Roosevelt and tradesmen now have had three opportunities to plead standing on a RICO that complies with precedent from the Supreme Court and this Court, and they have failed to do so. As all three of your honors have pointed out, neither Roosevelt nor tradesmen have alleged any first-step harm under RICO, and therefore, the district court properly dismissed the first amended complaint. Now, in granting Roosevelt and tradesmen the opportunity to amend its complaint, the district court set clear parameters, address RICO standing. Plaintiffs failed to do that despite being given two opportunities to do so by the district court. More brazenly, as your honors have pointed out, now Roosevelt is trying to change its status from a reinsurer to an entity that somehow, someway functions as a primary insurer. This Court should not allow Roosevelt or tradesmen to do that. One of the things that does concern you is what kind of notice did the appellants get with regard to Judge Gonzales' decision to treat the pre-motion letters as the necessary exchange in challenging the second amended complaint? Your Honor, I would say that Roosevelt and tradesmen were on notice twice that the district court had found deficiencies with respect to the complaint. With regard to the second amended complaint, did he discuss what those deficiencies are? Your Honor, in a footnote, Judge Gonzales did say that he wasn't deciding the merits of the second amended complaint. Because his dismissal is predicated more upon the fact that it's a deviation from the prior theories and that this was kind of a surprise, isn't that kind of what he was saying? That's right, Your Honor. And not only a surprise, it's exceeding the scope of the leave to amend that was permitted. But the amendments, I mean, the amendments are concededly, I mean, extraordinarily substantial in the sense that it recharacterizes, it doesn't recharacterize, it discusses a really completely different insurance relationship than is split in the first thing. But why isn't that simply an attempt to get more specificity in attempting to show or move the ball along with regard to the need for a direct injury? Why? Because that doesn't seem to have been addressed by him. It was more like, whoa, this is a big surprise, therefore I'm going to dismiss the complaint. He doesn't really get to the merits as to how it comes up short in any event, does he? You're right, Your Honor. Judge Gonzalez did not decide the merits and did not decide the separate question of whether a newly reincarnated entity that purports to be a primary insurer has standing under RICO. As we briefed, whether Roosevelt or Tradesman is a primary insurer or a reinsurer, it doesn't matter. It's still violative of the Holmes decision and this Court's decision and Labor's local. I'll give you, I certainly can appreciate that argument as to liability coverage, general comprehensive liability coverage, the role that they say that they assume. But what about the workers' comp side of this? Let me give you a hypothetical. An employer provides to an employee health insurance, Blue Cross Blue Shield. This is not an endorsement of Blue Cross Blue Shield, by the way. It's just one that just pops into my mind, not my carrier, but in any event. And so the employee, so the insurance company, the employer provides the benefit, the employee has the contract, but the employee does pay the premium, okay? And then the employee decides, you know, I get a reimbursement if I get a doctor's note that says that I did this. And so he or she goes to their doctor and the doctor forges that note, and then they submit a false claim. And then the employee continues to do that, or the employee in conjunction with others similarly employed, similarly insured, engage in a scheme with regard to defrauding their health insurance company. Does RICO reach the insurance, does RICO provide a remedy to the insurance company that's been defrauded with regard to those health insurance claims? It may, Your Honor. How then different? I apologize, I didn't let you finish. Go ahead and finish. No, Your Honor, it may if there's a direct submission of a knowingly fraudulent claim to the insurance provider. I fall off a ladder at a construction site that my employer has provided to me. I'm clearly working within the scope of my employment. I suffer a broken arm, which is scheduled by the Workers' Compensation Board. It's a closed comminuted fracture. I mean, I remember these cases back when I was practicing law eons ago, and there's a schedule of the injury, and it's expressed in terms of the number of weeks of salary or something. I thought it was a little bit harsh. But in any event, and I put a fraudulent claimant with regard to my injury. To whom do I submit the claim? Do I submit it to my employer, or do I submit it to the Workers' Comp carrier? My understanding, Your Honor, is that it's submitted either by the employee or the employee's attorney to the Workers' Compensation Board. Because pursuant to the Workers' Comp Law Section 50, all employers in New York are required to provide, quote, compensation to their employees, which is workers' compensation coverage, correct, for any injury that occurs while they're working within the scope of their employment? That's correct, Your Honor. So it's in the nature of health insurance, isn't it? I would say it's not, because, well, you have the health insurance in the context of the no-fault cases here, where courts have found that the insurer did have standing because the insurer was directly defrauded. This is a very different situation because you have the alleged victims taking everything, and the complaint is true. The alleged victims here are the construction companies. They're the ones that were allegedly subject to baseless personal injury actions based on a fraudulent case. But you just told me that the injured worker submits their claim to the Workers' Compensation insurer, correct? That's correct, but that's not the situation here. And also, too, Your Honor. Why is it not? Well, you mean as pled? You mean in terms of the First Amendment complaint or the Second Amendment complaint? Correct. There was no submission here directly in the First Amendment complaint, paragraph 54. That recognizes there's no intervening step here because the claims are submitted directly to the comp board, not to the insurance company. So that's the hitch. It's submitted to the comp board and not to the carrier? That's correct. That's my understanding, Your Honor, about it. What's your reading from the Second Amendment complaint, and what page are you reading from? Let's see. It's paragraph 54, invoices and documentation supporting the fraud scheme. What's the appendix citation? Your Honor, I don't have that. I'll find it. At my disposal. First Amendment complaint? Yes. All right. Thank you. Can you address, there's a peculiar aspect to the argument, which is if the construction employer is the one with RICO standing, the argument is that they have no actual damages, that since they're not paying anything out, they would never bring such a lawsuit. Is there a response to that or not? Yes, there is, Your Honor. I don't think it could be said on this record that a construction company would not have any injuries here. As the direct victim, they're the ones that are subject to increased insurance premiums. Their business cost goes up. It may be that the insurance doesn't cover all the damages either. I mean, there might be a lot of costs that are borne by an employer, even if the employer is insured, right? That's correct. That's correct, Your Honor. There might be self-insured retention, et cetera. So victims, construction companies, under the Holmes analysis here and under all the complaints, the three complaints here that were filed in this case, the construction companies are the entities that suffer, allegedly suffer the direct harm and would be the only ones conceivably that would have standing under RICO. I see my time has expired. If there's any additional questions, the appellees rest. All right. Thank you, Mr. Gergen. We'll now hear from Mr. Mann for two minutes of rebuttal. Your Honor, I'd like to concentrate on the fact of something that was raised by the court. When the judge in the September order found that my clients had gone beyond the scope permitted, okay, that was not anything that was in the June 2025 order. It was absolutely the only restriction that was made there was that we had 32 days to put in another amended complaint. There was no other restriction. It was an amended complaint to deal with the deficiencies that the court had identified, right? Well, no, because the court also pointed out that there were other potential deficiencies that he didn't have to go through since he found that there was a deficiency in the standing. But there was absolutely no other restriction. Your Honor, I would point out that in the Hofer case, this court specifically said, you can't in a subsequent order basically put in the restrictions that you wished you'd put in in the earlier order. And that's what happened here. The court below did not state anything. You know, Your Honor, I realize I'm running low, but I'm almost ‑‑ But the order talks about that it's to the extent necessary to correct any deficiencies. That's the language of the order, right? The order makes absolutely no restriction other than the 32 days. It says, you know, he doesn't ‑‑ And then the second thing that we talk about is futility. All roads lead to the second amended complaint. But you requested only, you requested leave to amend to the extent necessary to correct any deficiencies. That's the request in the complaint. And then the judge says, okay, I'm going to let you do that. And then you respond with an extra 85 pages, four new counts, five new defendants, and new legal theories. And so it's not clear how that is to correct deficiencies. Those are new theories, new claims, and new defendants. Your Honor, our adversaries not only attacked the first amended complaint on the grounds of standing. They attacked it on numerous grounds. And we were responding to all of those numerous grounds when we filed the second amended complaint. That is the fact that, you know ‑‑ So adding new counts was responding to ‑‑ Absolutely, Your Honor, because we were dealing with enterprise. We were dealing with all of the various issues that were raised by the defendant appellees in the court below in response to the first amended complaint. All right. But, I mean, we can certainly consider the second amended complaint here. If we were to find that the new language alleged in the second amended complaint doesn't cure the deficiencies, then it doesn't much matter, right? Yes, but also if you were to look at the second amended complaint, and I hope you will, you might also find that it does cure the standing issue. And it does, which is the only issue. Well, I mean, basically what it says is that instead of being a reinsurer, you're insurers, you're direct insurers, right? Yes, but, Your Honor, if you're going to find that direct insurers are not ‑‑ don't have standing under RICO, I would suggest to you, Your Honor, that that might be in conflict with certainly the recent Supreme Court case of medical marijuana, which basically says you can't ‑‑ you have to look at the RICO from a very, very broad point of view, and that if you don't, and if you think the statute is too broad, then you have to wait for Congress to amend it. And in this particular case, we are confident that if you do review the second amended complaint, you'll find that insurers, direct insurers or parties such as Roosevelt, who take the position of direct insurers and their responsibilities, they are directly harmed by the fraud. Your Honor, this is a fraud on the court. I don't know whether you understand this. There isn't my worthy adversary talks at some length about how horrible it is, and Mr. Subin has to go through this. If the allegations are true here, and I believe they are, the legal profession of which I have been a part for a half a century, as was my father 40 years before me and my son 20 years after me, the legal profession itself has been besmirched by the activities that we allege in this complaint. That may be true, and I think there's no shortage of remedies for that, including state law claims, including disciplinary actions in front of bar associations. The only question before us is whether there's RICO standing to click in a treble damages provision that is gold. And, you know, I think that's where there's some skepticism here. But nobody's suggesting that Mr. Gergen's clients are necessarily innocent as the druids know. Your Honor, speaking about treble damages, et cetera, if our only interest was treble damages, we would have sued under 487 of the judiciary law, which specifically condemns fraud on the court by lawyers, and gives both criminal penalties and civil penalties. We believe that RICO is an important component and that it should be used in cases such as the incident. All right. Well, thank you both. We will reserve decision. Thank you. Thank you very much, Your Honor. And I apologize if I interrupted. All right, Mr. Mann. We're New Yorkers. We get over this stuff. We talk over each other all the time. That's how we live. So no worries. Your apology is accepted.